805 S.E.2d 201

**In the MATTER OF Heather Mary Boone MCKEEVER, Respondent.**

**Appellate Case No. 2016-002464**
**Opinion No. 27739**

Supreme Court of South Carolina.

Heard March 22, 2017

Filed September 20, 2017

Lesley M. Coggiola, Disciplinary Counsel, and Barbara Marie Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Heather Mary Boone McKeever, of Lexington, Kentucky, pro se.

PER CURIAM:

The numerous charges against Respondent Heather Mary Boone McKeever in this disciplinary matter include the unauthorized practice of law, improper fee arrangements, false statements before the court, and attempting to intimidate a former client. Because McKeever failed to answer the formal

charges against her and failed to appear at her hearing before the Commission on Lawyer Conduct, she is in default and the charges against her are deemed admitted. The only matter before the Court is determining the appropriate sanction for McKeever's misconduct. At the hearing before this Court, McKeever offered no mitigating evidence or explanation for her conduct. Because of her pattern of abusing the judicial process, masking her misconduct, and, perhaps most troubling, attempting to intimidate a former client through meritless lawsuits, we find it appropriate to permanently debar McKeever in this state, order her to pay the costs of the investigation and subsequent proceedings, and other sanctions as will be described herein.

## FACTS

The following facts are drawn from the formal charges against McKeever, which are deemed admitted pursuant to Rule 24(a) of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).

McKeever is a licensed attorney in Kentucky who moved to Charleston with her husband, Shane Haffey, in the midst of the foreclosure of a $1,000,000.00 loan on their Kentucky home. Upon arriving in Charleston, McKeever came into contact with Betty McMichael, who owned two properties— 991 Governors Road where she resided, and 986 Governors Road which she rented out. After learning that McMichael faced foreclosure on both of these properties, McKeever offered her legal representation, despite not being licensed to practice law in South Carolina. McMichael initially declined the offer, but she ultimately agreed to the arrangement after repeated phone calls and visits from McKeever. In exchange for McKeever's legal services, McMichael allowed McKeever and her family to live in the 986 Governors Road house rent-free during the course of representation—an improper fee arrangement because McKeever did not advise McMichael on the scope of her legal representation or the basis for her fees. Moreover, McKeever obtained a possessory interest in the property that was the subject of the litigation—a conflict of interest of which McKeever did not make McMichael aware.

Upon obtaining McMichael's consent to represent her in the foreclosure actions, McKeever's subterfuge began. Sometime

after McMichael accepted her legal representation, McKeever induced her to issue a quitclaim deed granting title to 986 Governors Road to Bondson Holdings, a fictitious entity owned by McKeever and Haffey. Moreover, after the judge granted permission for McKeever to appear *pro hac vice* in the 991 Governors Road foreclosure action in July 2011, she took no steps to protect McMichael's interest for the next year while living rent-free in a house owned by McMichael in exchange for her legal representation. Ultimately, a licensed South Carolina attorney was forced to make an appearance on behalf of McMichael in 2012 and the case was eventually dismissed in 2013.

While representing McMichael in connection with the first foreclosure action brought against 986 Governors Road, McKeever again sought *pro hac vice* admission with a licensed South Carolina attorney serving as local counsel. Without consulting local counsel or McMichael, McKeever filed a document entitled "Answer Class Action Complaint" under local counsel's name. In the document, she asserted thirty-nine affirmative defenses, apparently in an effort to remove the encumbrances on the property and secure clear title, which McKeever and Haffey held after receiving the deed from McMichael.[1] Additionally, in an attempt to delay and hinder the foreclosure proceedings, McKeever falsely claimed that McMichael resided at the property, levied allegations against opposing counsel, and filed notices of depositions for numerous named and unnamed individuals. When local counsel discovered McKeever filed the answer under her name and without her knowledge, she moved to be relieved as counsel. Eventually the mortgage holder voluntarily dismissed its action against McMichael, and in November 2011 McKeever filed the quitclaim deed to 986 Governors Road.[2] McKeever took no further legal action on McMichael's behalf; however, she retained the benefit of living at 986 Governors Road rent-free and holding title to the property.

---

1. McKeever did not disclose this fact to local counsel or to any other parties to the action.

2. It appears McKeever delayed filing the deed until after the foreclosure action was dismissed to avoid any discovery of her interest in the property and resulting conflicts of interest.

In late 2012, Bank of America acquired the entity which held the note on 986 Governors Road and reinstituted foreclosure proceedings on the property. Prior to filing, Bank of America's attorneys conducted a title search and discovered the quitclaim deed granting title to Bondson Holdings. Bank of America then filed its action naming both McMichael and Bondson Holdings in its summons and complaint. McKeever contacted South Carolina attorney Parker Barnes, Jr. and requested he serve as local counsel for McMichael, falsely representing that she was eligible to appear *pro hac vice*. McKeever filed no answer, responsive pleadings, or any other motions on behalf of McMichael aside from a motion for an extension of time to file a response and objection to a transfer to the Master in Equity. This Court issued a letter to the Charleston County Clerk of Court advising that McKeever was not licensed to practice law in South Carolina, nor had she filed an application for *pro hac vice* admission in the matter.[3] Nevertheless, McKeever continued to file pleadings and motions on behalf of Bondson Holdings and Haffey. In these various motions and pleadings, McKeever asserted frivolous or meritless legal positions, made false statements, and threatened civil action and criminal prosecution against Barnes, opposing counsel, the presiding judge, and the clerk of court.

After McKeever's repeated efforts to stall the foreclosure process on 986 Governors Road failed, she attempted to perpetuate the scheme to defraud McMichael and Bank of America by filing two lawsuits against McMichael in Kentucky. Despite Kentucky's lack of jurisdiction over McMichael, McKeever filed suit on behalf of Bondson Holdings seeking $327,500.00 in damages, alleging conversion and disparagement of title based on false accusations that McMichael encumbered 986 Governors Road with the mortgage now held by Bank of America and two other debts incurred after deeding the property to Bondson Holdings. In the second Kentucky action, McKeever brought suit on behalf of her purported law firm, McKeever Law Offices, LLC, claiming $256,200.00 in damages for McMichael's failure to pay attorney's fees. McMi-

---

**3.** Although Barnes had earlier motioned to be relieved as local counsel for McMichael, he resumed his representation to protect her legal interests after learning of McKeever's misrepresentations.

chael was forced to hire local counsel in Kentucky to defend against these actions, and Bondson Holdings' claim was eventually dismissed with prejudice for lack of personal jurisdiction.[4] The presiding judge further ordered Bondson Holdings to pay McMichael $1,500.00 in attorney's fees, but McMichael agreed to forego payment of the award in response to threats of an appeal by McKeever. McKeever's actions in filing suit against McMichael were intentionally designed to intimidate and coerce her, and to perpetuate the scheme to defraud her and obtain title to 986 Governors Road free of any encumbrances.

In yet another attempt to delay the foreclosure proceedings brought against 986 Governors Road, McKeever assisted Haffey with the filing of a bankruptcy petition in Kentucky for an entity he owned called Sandlin Farms, falsely claiming the entity owned an interest in 986 Governors Road. The bankruptcy court dismissed the petition, finding Haffey engaged in "an ongoing pattern of delay" and abused the bankruptcy process.[5]

McKeever also engaged in the unauthorized practice of law in two other instances when she appeared on behalf of another homeowner facing foreclosure in Beaufort County in 2012 and then appeared on behalf of her own adult daughter in January 2015 after the daughter was charged with speeding.[6] Despite the arresting officer repeatedly advising McKeever that she was engaging in the unauthorized practice of law, she filed a motion to dismiss and made multiple appearances on behalf of her daughter without applying for *pro hac vice* admission.

---

4. The final disposition of the claim filed by McKeever Law Offices, LLC is not clear from the record.

5. McKeever signed and filed an appeal of this dismissal on behalf of Haffey. That appeal is pending, with an order holding it in abeyance pending the outcome of various appeals McKeever filed in litigation related to the foreclosure on the $1,000,000.00 loan on the Kentucky property.

6. While appearing on behalf of her daughter, McKeever also made numerous false statements to the court, including asserting dismissal was warranted because the State failed to appear at two earlier hearings and representing that her daughter was entitled to the appointment of a guardian ad litem, despite knowing her daughter had already reached the age of majority.

In summary, since arriving in South Carolina in 2010, McKeever has engaged in the unauthorized practice of law and violated the rules of *pro hac vice* admission. She actively solicited McMichael's consent to represent her in foreclosure proceedings despite not being licensed to practice in South Carolina; prepared and filed a quit claim deed to 986 Governors Road; and represented Bondson Holdings and Haffey's interest in the 986 Governors Road foreclosure action without seeking *pro hac vice* admission. Likewise, throughout these various proceedings, McKeever was not eligible to appear *pro hac vice* because she resided in South Carolina,[7] was regularly engaged in the practice of law in the state, and was regularly engaged in substantial business activities in South Carolina. McKeever then used her confidential relationship with McMichael to obtain title to McMichael's property and resided in the premises rent-free for years, all the while failing to provide any meaningful representation or protect McMichael's legal interests. When the Office of Disciplinary Counsel initiated its investigation of McKeever's alleged misconduct by serving her with a notice of investigation in May 2013, she failed to submit a written response as required by Rule 19(b), RLDE, failed to appear to answer questions under oath, failed to produce subpoenaed documents, and made numerous false statements to mislead disciplinary counsel.

## ANALYSIS

The authority to discipline attorneys and the manner in which the discipline is administered rests entirely with this Court. *In re Tullis*, 375 S.C. 190, 191, 652 S.E.2d 395, 395 (2007). We have repeatedly held that an attorney's failure to participate in a disciplinary proceeding is indicative of a disinterest in the law and will be given substantial weight in determining the appropriate sanction. *In re Murph*, 350 S.C. 1, 4, 564 S.E.2d 673, 675 (2002). An attorney who fails to answer charges or appear to defend or explain her alleged misconduct is subject to the harshest sanctions because the disciplinary process is designed largely to protect the public from indifferent or unscrupulous lawyers. *Id.*

---

7. At the time of McKeever's infractions, the Appellate Court Rules prohibited persons residing in South Carolina from obtaining *pro hac vice* admission. That rule has since been amended to allow *pro hac vice* admission to South Carolina residents. Rule 404, SCACR.

■ As a result of her actions, we find McKeever violated Rule 404(a)–(c), SCACR, and the following Rules of Professional Conduct: 1.1; 1.2; 1.3; 1.4; 1.5; 1.7; 1.8; 1.16; 3.1; 3.2; 3.3; 3.4; 4.1; 5.5; and 8.4. Rule 407, SCACR.

In light of McKeever's blatant disregard for this state's regulation of the legal profession, her abuse of the judicial system, threatening and coercive behavior directed at McMichael, and her lack of candor with various courts, we impose the following sanctions and declare McKeever be: (1) permanently debarred, prohibiting her from seeking any form of admission to practice law (including *pro hac vice* admission) in South Carolina, and prohibiting her from advertising or soliciting legal services in the state; (2) ordered to pay McMichael $1,500.00 for attorney's fees related to the actions filed in Kentucky; and (3) ordered to pay the costs of the disciplinary investigation and formal proceedings. Moreover, pending the outcome of the bankruptcy proceeding in which Haffey has subjected the 986 Governors Road property, we reserve the right to void any deed through which McKeever wrongfully granted title to herself and Haffey in violation of our Rules of Professional Conduct.

Within fifteen (15) days of the date of this opinion, McKeever shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30 of Rule 413, SCACR.

**DEBARRED.**

BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.