TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

2017-SC-000560-KB DATE 2/27/18 Kim Redmon, DC

KENTUCKY BAR ASSOCIATION                                      MOVANT


V.                        IN SUPREME COURT


HEATHER MARY BOONE MCKEEVER                          RESPONDENT


## OPINION AND ORDER

The Kentucky Bar Association ("KBA") petitions this Court to impose reciprocal discipline on Heather Mary Boone McKeever under Supreme Court Rule ("SCR") 3.435. McKeever was admitted to practice law in the Commonwealth of Kentucky on October 12, 1990. Her bar roster address is 3250 Delong Road, Lexington, Kentucky 40515.

## FACTS AND PROCEDURAL HISTORY

On September 20, 2017, the Supreme Court of South Carolina rendered an Opinion debarring McKeever for numerous violations of the South Carolina Rules of Professional Conduct. *Matter of McKeever*, 805 S.E.2d 201 (S.C. 2017). McKeever and her husband Shane Haffey moved to Charleston, South Carolina, during the foreclosure of a loan on their Kentucky residence. *Id.* In Charleston, South Carolina, McKeever met Betty McMichael who owned two properties – 991 Governors Road, where she resided, and 986 Governors

Road, which she rented out. *Id.* at 202. Upon learning that McMichael faced foreclosure on these properties, McKeever repeatedly offered her legal representation, despite not being licensed to practice law in South Carolina. *Id.* In exchange for McKeever's legal services, McMichael permitted McKeever and her family to live in the 986 Governors Road house rent free during the course of the representation.[1] *Id.*

After McKeever began representing McMichael she compelled her "to issue a quitclaim deed granting title to 986 Governors Road to Bondson Holdings, a fictitious entity owned by McKeever and Haffey." *Id.* While McKeever was granted permission to appear *pro hac vice* in the 986 Governors Road foreclosure action in July 2011, she took no steps to protect McMichael's interest in the property. *Id.* Instead, McKeever filed a pleading styled "Answer Class Action Complaint," under the name of a South Carolina attorney who was serving as local counsel for her *pro hac vice* admission. In this pleading, which was filed without informing local counsel or McMichael, McKeever asserted thirty-nine affirmative defenses to remove encumbrances on the property and secure clear title.[2] *Id.* "Additionally, in an attempt to delay and hinder the foreclosure proceedings, McKeever falsely claimed that McMichael resided at the property, levied allegations against opposing counsel, and filed notices of depositions for numerous named and unnamed individuals." *Id.*

---

[1] McKeever obtained a possessory interest in the property, which was the subject of the litigation, without informing McMichael of the inherent conflict of interest. *McKeever*, 805 S.E.2d at 202.

[2] After local counsel discovered that McKeever had filed an answer under her name without her consent, she requested to be relieved as counsel. *Id.*

2

Ultimately the mortgage holder voluntarily dismissed its action against McMichael and afterwards McKeever filed the quitclaim deed to 986 Governors Road. *Id.* The Supreme Court of South Carolina concluded that McKeever's decision to wait to file the deed until after the foreclosure action was dismissed was designed "to avoid any discovery of her interest in the property and the resulting conflicts of interest." *Id.* n. 2.

In late 2012, Bank of America purchased the entity which held the note on 986 Governors Road and reinstituted foreclosure proceedings on the property. *Id.* at 202. A title search by Bank of America led to the discovery of the quitclaim deed granting title to Bondson Holdings. *Id.* Next, Bank of America filed its action naming both McMichael and Bondson Holdings. *Id.* Subsequently, McKeever contacted a South Carolina attorney, Parker Barnes Jr., and requested that he serve as local counsel for McMichael, falsely asserting that she was eligible to appear *pro hac vice.* *Id.* Despite not filing an application to appear *pro hac vice,* McKeever continued to file motions on behalf of Bondson Holdings and Haffey. *Id.* at 202-03. The Supreme Court of South Carolina concluded that "[i]n these various motions and pleadings, McKeever asserted frivolous or meritless legal positions, made false statements, and threatened civil action and criminal prosecution against Barnes, opposing counsel, the presiding judge, and the clerk of court." *Id.* at 203. Ultimately it was necessary for a South Carolina attorney to make an appearance for McMichael, who was able to have the case with Bank of America dismissed in 2013. *Id.* at 202.

3

Later McKeever attempted to defraud McMichael and Bank of America by filing two lawsuits against McMichael in Kentucky. *Id.* at 203. In the first action she alleged conversion and disparagement of title based on her false claim that McMichael had encumbered the 986 Governors Road property with a mortgage held by Bank of America after the property had been deeded to Bondson Holdings. *Id.* In the second action, McKeever brought suit on behalf of her purported law firm, McKeever Law Offices, LLC, for McMichael's alleged failure to pay $256,000 in attorney's fees. *Id.* McMichael was compelled to hire counsel in Kentucky to defend these actions. *Id.* The Supreme Court of South Carolina deemed McKeever's actions to be "intentionally designed to intimidate and coerce [McMichael], and to perpetuate the scheme to defraud her and obtain title to 986 Governors Road free of any encumbrances." *Id.* Additionally, McKeever assisted Haffey with a bankruptcy petition filed in Kentucky for an entity he owned called Sandlin Farms, wrongfully asserting that the entity owned an interest in 986 Governors Road. *Id.* The bankruptcy petition was ultimately dismissed, with the bankruptcy court concluding that Haffey had engaged in "an ongoing pattern of delay" abusing the bankruptcy process.[3] *Id.*

In May 2013, South Carolina's Office of Disciplinary Counsel initiated an investigation of McKeever's misconduct by serving her with a notice of

---

[3] McKeever later unsuccessfully represented Haffey in his appeal of his bankruptcy case to the United States Court of Appeals for the Sixth Circuit. *In re Haffey,* 576 B.R. 540 (B.A.P. 6th Cir. 2017)).

4

investigation.[4] *Id.* at 204. Subsequently, McKeever failed to submit a written response to the allegations as mandated by Rule 19(b) of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). *Id.* Additionally, McKeever "failed to appear to answer questions under oath, failed to produce subpoenaed documents, and made numerous false statements to mislead disciplinary counsel." *Id.*

Due to McKeever's failure to answer the formal charges against her or appear at her hearing before the Commission on Lawyer Conduct, her case was submitted to the Supreme Court of South Carolina as a default case. *Id.* at 201. While the charges against McKeever were deemed admitted, the Court conducted a hearing in which McKeever participated to assess penalty. *Id.* At that hearing, "McKeever offered no mitigating evidence or explanation for her conduct." *Id.*

After considering McKeever's case, the Supreme Court of South Carolina concluded that she violated SCACR 404(a)-(c) and the following provisions of South Carolina's Rules of Professional Conduct: 1.1 Competence; 1.2 Scope of

---

[4] The Supreme Court of South Carolina concluded that in addition to her representation of McMichael, McKeever engaged in the unauthorized practice of law on two other occasions. *McKeever*, 805 S.E.2d at 203. First, McKeever appeared on behalf of another homeowner facing foreclosure in 2012. *Id.* Second, she appeared on her adult daughter's behalf when she was charged with speeding in 2015. *Id.* Despite being warned repeatedly by the arresting officer that representing her daughter would constitute unauthorized practice of law, McKeever persisted, filing a motion to dismiss and making multiple appearances in the case. *Id.* As part of McKeever's representation of her daughter, "McKeever also made numerous false statements to the court including, asserting dismissal was warranted because the State failed to appear at two earlier hearings and representing that her daughter was entitled to the appointment of a guardian ad litem, despite knowing her daughter had already reached the age of majority." *Id.* at n. 6.

5

Representation and Allocation of Authority Between Lawyer and Client; 1.3 Diligence; 1.4 Communication; 1.5 Fees; 1.7 Conflict of Interest: Current Clients; 1.8 Conflict of Interest: Current Clients: Specific Rules; 1.16 Declining or Terminating Representation; 3.1 Meritorious Claims and Contentions; 3.2 Expediting Litigation; 3.3 Candor Toward the Tribunal; 3.4 Fairness to Opposing Party and Counsel; 4.1 Truthfulness in Statements to Others; 5.5 Unauthorized Practice of Law; Multijurisdictional Practice of Law; and 8.4 Misconduct. *Id.* at 204.

In assessing what penalty would be appropriate for these numerous ethical violations, the Supreme Court of South Carolina noted: McKeever's "pattern of abusing the judicial process," efforts to mask her misconduct, "attempt[s] to intimidate a former client through meritless lawsuits," "lack of candor with various courts," and her "blatant disregard for this state's regulation of the legal profession." *Id.* at 201, 204. Accordingly, the Supreme Court of South Carolina imposed the following sanctions against McKeever: 1) that she be "permanently debarred, prohibiting her from seeking any form of admission to practice law (including *pro hac vice* admission) in South Carolina, and prohibiting her from advertising or soliciting legal services in the state;" 2) requiring her to pay McMichael for attorney's fees related to the Kentucky court proceedings;[5] and 3) ordering her to pay the costs of the disciplinary investigation and formal proceedings. *Id.* at 204. Additionally, the Supreme

---

[5] The Kentucky judge ordered McKeever to pay McMichael $1500 for her attorney's fees, but McKeever threatened an appeal, causing McMichael to back off any attempt to collect.

6

Court of South Carolina noted that it reserved the right to void any title to real property McKeever wrongfully granted to herself and Haffey in violation of the South Carolina Rules of Professional Conduct. *Id.*

On October 17, 2017, the KBA petitioned this Court for reciprocal discipline pursuant to SCR 3.435. The KBA requests McKeever be disbarred from the practice of law in Kentucky as reciprocal discipline for her debarring in South Carolina. McKeever has filed a response to the KBA's petition and opposes the KBA's request on multiple grounds.

## ANALYSIS

The South Carolina ethical rules violated by McKeever are substantially comparable to our Kentucky Rules of Professional Conduct. Under SCR 3.435 when an attorney licensed to practice law in this Commonwealth is subjected to discipline in another jurisdiction, this Court will impose identical discipline unless the attorney proves by substantial evidence: "(a) a lack of jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that misconduct established warrants substantially different discipline in this State." Further, SCR 3.435 is clear that "[i]n all other respects, a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this State."

McKeever contends that the South Carolina disciplinary proceeding was the result of fraud. Specifically, McKeever alleges that the disciplinary proceeding was the result of personal animus by Barbara Seymour formerly of

7

the South Carolina Office of Disciplinary Counsel. According to McKeever, Seymour filed a 2016 complaint against her in concert with another South Carolina attorney Dean Hayes – after McKeever had filed two ethics complaints against Hayes and a law firm of which he was a member. McKeever focuses her ire towards Seymour referring to her as a "classic bully" and stating that her employment with the state of South Carolina was terminated. However, McKeever has presented no evidence substantiating her attacks against Seymour's character or establishing that there was fraud in South Carolina's disciplinary process.

Related to McKeever's allegation of fraud in the South Carolina disciplinary process is her claim that she was never provided with notice of the ethics complaint by the South Carolina's Office of Disciplinary Counsel. However, attached as an exhibit to McKeever's pleading in this Court is a copy of the Commission on Lawyer Conduct's Default Order against McKeever. In that Order, the Commission on Lawyer Conduct states that "[McKeever] was served at both the address she maintains with the Kentucky State Bar and her last known address, which is her residence in South Carolina." Yet, even if the Court were to disregard this Order and assume McKeever's allegation was true, her pleading to this Court makes clear that she was aware of the ethics complaint prior to the Supreme Court of South Carolina's adjudication of her case.

On March 13, 2017, McKeever attempted to disrupt her disciplinary proceedings by filing a "Complaint for Declaratory Judgment, Temporary

8

Injunction, Permanent Injunction, and Damages," which challenged the constitutionality and jurisdiction of the South Carolina Office of Disciplinary Counsel in the United States District Court for the Eastern District of Kentucky. This pleading, which was attached as an exhibit to McKeever's response to the KBA's motion, lists Seymour and each of the members of the Commission on Lawyer Conduct as defendants in both their official and individual capacities. Particularly noteworthy in McKeever's pleading are the following claims: 1) under 42 U.S.C. § 1983 for violations of "ministerial and discretionary duties" related to the disciplinary complaint filed against McKeever; 2) under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* alleging "us[e] of the mails to defraud Haffey of money and/or property;" and 3) for "Tortious Interference with Court Ordered Agreements and Private Contracts."

Additionally, McKeever alleges that Seymour "has equally attempted to invade Haffey's privacy, misused state investigative funds in regards to him, has illegally attempted to deprive him of property, has violated his due process rights and defamed him (if the documents have been 'published')." McKeever goes on to state that "[t]he record in the matter reflects Seymour's arrogant disregard for McMichael, and her disrespect for her position as a public servant, makes her a menace to the public at large and she should be removed from further participation in the [Office of Disciplinary Counsel] proceedings and terminated as a public servant." McKeever asserts in her pleading to this

9

Court that a copy of this federal suit was submitted to the Supreme Court of South Carolina in March 2017.[6]

Also, on March 17, 2017, McKeever's husband Haffey submitted a letter to the South Carolina Supreme Court in which he states that he is the co-owner of 986 Governors Road and that the property was subject to his Chapter 12 bankruptcy proceeding. As such, it is clear that McKeever was aware of the disciplinary proceedings that had been instituted against her prior to the Supreme Court of South Carolina's consideration of this case on March 22, 2017. Further, the Opinion of the Supreme Court of South Carolina is clear that McKeever was present at that hearing on sanctions and "offered no mitigating evidence or explanation for her conduct." *Id.* at 201.

Beyond McKeever's allegations of fraud, she also raises meritless arguments concerning the content, finality, and transmission of the Opinion of the Supreme Court of South Carolina. McKeever claims that the Opinion lacks "findings of fact or conclusions of South Carolina law" and does not include "specific case numbers or docket sheets to instances where McKeever allegedly engaged in the unlawful practice of law[.]" We disagree as the Supreme Court of South Carolina thoroughly documented McKeever's ethical transgressions and identified the numerous Rules of Professional Conduct that she brazenly violated. Nor do we accept her argument that the Supreme Court of South Carolina's order is interlocutory or not final. The Supreme Court of South

---

[6] McKeever's suit was dismissed for lack of personal jurisdiction on May 17, 2017. *Haffey v. Seymour*, Civil Action No. 5:17-124-KKC, 2017 WL 2175470 (E.D. Ky. 2017).

10

Carolina's willingness to void any title to real property McKeever wrongfully granted to herself and Haffey in violation of the South Carolina Rules of Professional Conduct does not make the Court's order interlocutory. Nor has McKeever presented any evidence that she has sought to forestall enforcement of the Opinion, by petitioning the Supreme Court of South Carolina for reconsideration or seeking to enjoin enforcement of the decision by a federal court with jurisdiction to consider the case.[7][8]

Finally, McKeever argues that this Court should not disbar her as reciprocal discipline for her debarring in South Carolina. First, McKeever contends that the action of the Supreme Court of South Carolina was improper, by alleging that there is no provision for "debarment" in South Carolina's RLDE. McKeever is correct that at the time she was sanctioned that debarment was not a specifically enumerated punishment for attorney misconduct.[9] However, Rule 7 of the RLDE includes a catch-all provision to provide the Supreme Court of South Carolina with "broad powers" to impose

---

[7] We are similarly unmoved by McKeever's argument that she has not received a copy of the Opinion of the Supreme Court of South Carolina. McKeever claims that due to her failure to receive a copy of the Opinion that she was deprived "of the opportunity to contact the Kentucky Bar proactively, leaving [her] blindsided with lack of opportunity to meet with the Kentucky Bar as to a resolution without the use of the Court's resources and without litigation." We are skeptical of McKeever's claim that she did not receive a copy of the Opinion of the Supreme Court of South Carolina. However, even if McKeever had not initially received a copy of the Opinion, which is publicly accessible, she does not identify how it has prejudiced her in this proceeding.

[8] McKeever also alleges that the Opinion of the Supreme Court of South Carolina interferes with a "Kentucky Federal Order." However, this argument is unpersuasive given that McKeever fails to even identify what federal case would supposedly be impacted by the Opinion of the Supreme Court of South Carolina.

[9] After the adjudication of McKeever's case, the Supreme Court of South Carolina amended its rules to explicitly identify debarment as an available penalty for ethics violations.

11

any other requirements or sanctions it deems appropriate. *See In re Crews*, 698 S.E.2d 785, 795 (S.C. 2010). As such, there was no issue with the Supreme Court of South Carolina debarring McKeever for her ethical violations.

Second, McKeever contends that disbarring her would be an inappropriate punishment under these circumstances. Tacitly arguing for a sanction short of disbarment, McKeever notes that attorneys who are disbarred in South Carolina are permitted to apply for reinstatement after a five-year period, whereas disbarment in Kentucky is irrevocable. In considering what disciplinary sanction is appropriate for McKeever, we note that this Court has on occasion imposed a lesser sanction when reciprocal discipline is sought by the KBA. *See, e.g., Kentucky Bar Association v. Moeves*, 297 S.W.3d 552 (Ky. 2009).

While we appreciate McKeever's argument that our disciplinary process differs from some of our sister states, such as South Carolina, in that disbarment in this Commonwealth is irrevocable, we find that this penalty is the sanction appropriate for her pattern of serious misconduct. Her misconduct certainly does not warrant "substantially different discipline" in Kentucky. SCR 3.435. While McKeever has no prior discipline, her serial misconduct reflects adversely on the profession of law. "The practice of law is an honorable profession and no lawyer should ever do any act or acts that would in any way reflect poorly upon the honorable profession of law." *Grisby v. Kentucky Bar Association*, 181 S.W.3d 40, 42 (Ky. 2005) (*citing Kentucky Bar Association v. Burbank*, 539 S.W.2d 312 (Ky. 1976)). "It is a long standing

12

principle that for one to be worthy to practice law, the person must have a good moral character upon entering the profession, and must maintain such character all through his or her professional life. *Id.* (*citing In re Lane*, 291 S.W.2d (Ky. 1956)).

It is clear that McKeever abused her relationship of trust and confidence with McMichael in an unsuccessful scheme to obtain the residence located at 986 Governors Road. Additionally, McKeever's unethical actions were not limited to the courts of South Carolina, as she wrongly employed the judicial process of this Commonwealth to subject McMichael to further harassment. McKeever's conduct in the two other unauthorized practice cases further illustrates her willful disregard of professional conduct rules. Having reviewed the record, we find substantial evidence supporting the Supreme Court of South Carolina's debarment of McKeever and no evidence or credible argument justifying "substantially different discipline" in Kentucky.

Accordingly, having concluded reciprocal discipline is appropriate pursuant to SCR 3.435, this Court ORDERS:

1. Heather Mary Boone McKeever is subject to reciprocal discipline for the misconduct found by the Supreme Court of South Carolina. McKeever's misconduct is established conclusively for purposes of disciplinary proceedings in this State:

2. Under SCR 3.435(4) McKeever is permanently disbarred from the practice of law in Kentucky, effective ten (10) days from the date of the rendition of this Opinion and Order.

13

3. McKeever must notify all courts and clients of her disbarment in accordance with SCR 3.390. Those notifications must be made by letter in the United State mail within ten (10) days from the date of entry of this Opinion and Order. McKeever must also simultaneously provide a copy of all notification letters to the Office of Bar Counsel. Also, to the extent possible, McKeever must cancel and cease any advertising activities in which she is engaged; AND

4. In accordance with SCR 3.450, McKeever is directed to pay all costs associated with these disciplinary proceedings against her, if there are any, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: February 15, 2018.

CHIEF JUSTICE